# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| "SIKHS FOR JUSTICE" (SFJ) <br> on behalf of deceased and tortured <br> member of Sikhs community; <br><br> Shiromani Akali Dal (SAD) (Amritsar) <br> a.k.a. Shiromani Akali Dal Mann <br> on behalf of its deceased and tortured, <br> members, officers supporters <br><br> JEET SINGH, <br> a victim of torture, on his own behalf; <br><br> GURDEEP KAUR, <br> a victim of torture, on her own behalf; <br><br> JAGTAR SINGH <br> a victim of torture, on his own behalf; <br><br> Jhon Doe, <br> Un-named victims of torture <br><br> **Plaintiffs,** <br><br> v. <br><br> Parkash Singh BADAL, <br> a national and citizen of India <br> and Chief Minister of the State of Punjab <br> **Defendant.** | Civ. No._____ <br><br><br><br><br><br><br> COMPLAINT <br><br><br><br><br> CLASS ACTION <br><br><br><br><br><br> JURY TRIAL DEMANDED |

Plaintiffs, individually and collectively, allege the following:

## I. PRELIMINARY STATEMENT

1) The above named plaintiffs themselves or their legal representatives have suffered torture, cruel and inhuman treatment while residing in Indian State of Punjab, in the hands of Police and other law enforcement agencies that work under the orders and under the command and control of the defendant Parkash Singh BADAL (hereinafter "Badal") who was and has been the Chief Minister of the State of Punjab during the periods from 1997 till 2002 and from 2007 till 2012.

2) The defendant Badal has been and continues to be in command and control of the police and other security forces in the state of Punjab, India and the forces under his control have perpetrated acts of tortured upon the defendants.

3) The plaintiffs are those and represent those who were either personally tortured or represent those who were tortured or killed by the forces operating the command and control of the defendant during the relevant time period.

4) This is a civil action for compensatory and punitive damages against defendant Parkas Singh BADAL for violations of state, federal and international law committed against the Plaintiffs.

## II. PARTIES

### A. Named Plaintiffs

5) Plaintiff "Sikhs for Justice" is a legal entity registered and incorporated in the State of New York with a 501(c)(3) (not for profit) status, working to seek justice Sikhs killed or tortured in India from 1984 onwards.

6) Plaintiff Shiromani Akali Dal (SAD) a.k.a Shiromani Akal Dal Mann "hereinafter called as "SAD-Mann" is a political party of India headed by Simranjit Singh Mann and is struggling for the creation of independent Sikh state of Khalistan through peaceful and democratic means. The Plaintiff SAD-Mann is moving through its International General Secretary Jeet Singh and on behalf of SAD-Mann members, officers and supporters who have been extra judicially killed, illegally detained, tortured and abused during the relevant times by the security forces in Punjab operating under orders, command and control of defendant Parkash Singh Badal.

7) Plaintiff Jeet Singh (husband of Gurdeep Kaur) is a male Sikh, national and citizen of India, currently residing in United States, previously resident of Dera Bassi, Patiala, Punjab, India and is International General Secretary of SAD-Mann, a political party demanding the creation of separate state of Khalistan through peaceful and democratic means. Due to his political activities from the platform of SAD-Mann, Jeet Singh was illegally detained, physically and mentally tortured and abused by the police and security forces operating under

the orders of and under the command and control of the defendant Badal in 2001, 2007, 2008 and 2009.

8) Plaintiff Gurdeep Kaur, is a female, Sikh, national and citizen of India, currently residing in United States, previously a resident of Dera Bassi, Patiala, Punjab, India and member and supporter of Shiromani Akali Dal Mann, a political party demanding the creation of separate state of Khalistan through peaceful and democratic means. Due to her political activities and support of Khalistan, in the year 2001, Plaintiff Gurdeep Singh was illegally detained, physically and mentally tortured and abused by the police and security forces operating under the orders of and under the command and control of the defendant Badal.

9) Plaintiff Jagtar Singh, is a male, Sikh, national and citizen of India, currently residing in United States, previously resident of Sehna Barnala, Punjab, India and member and supporter of SAD-Mann. In December 1999 and September 2008, the plaintiff was illegally detained, physically and mentally tortured and abused by the police and security forces operating under the orders of and under the command and control of the defendant Badal.

10) Plaintiff Jhon Doe is/are individual plaintiff(s) or their legal heirs who were extra judicially killed and/or tortured and/or abused by the security forces in the State of Punjab during the period from 1997 till 2002 and from 2007 till present while defendant Parkash Singh Badal was the Chief Minister of the State and was thus in full command and control of the security forces in the State of Punjab.

**B. Named Defendant**

11) Defendant is an individual citizen and national of India. Defendant is currently Chief Minister (CM) of the State of Punjab in India. The defendant has been Chief Minister of the State of Punjab for the periods from 1997 till 2002 and from 2007 till present and as CM heads all the security forces in Punjab, particularly Punjab Police.

12) As CM, defendant Badal is also directly and ultimately responsible for the actions of all the government machinery and particularly the security forces and the Punjab Police the operating under his command and control.

13) As CM the defendant exercises and during relevant times exercised full control over the security forces in Punjab and Punjab Police, particularly, appointment, transfer, promotion, demotion, suspension and relegation of officers and members of the security forces and particularly Punjab Police.

14) The defendant Badal, throughout his tenure has also actively shielded, protected and promoted the police officers who were or have been involved in gross human rights violations, extra judicial killings and torture.

### C. Class Allegations

15) The class consists of all men, women and children who are surviving the illegal detentions, torture (mental and physical) and degrading and inhuman treatment that they suffered in the hands of Punjab Police and other security forces in Punjab during the period and tenure of Parkash Singh Badal as Chief Minister of Punjab, specifically during the time period from 1997-2002 and from 2007 till present.

16) The class also consists of next of kin of the legal/personal representatives of the next of kin of those who were killed during the relevant time period in extra judicial killing in the hands of Punjab Police or other security forces in Punjab.

17) The exact number of class members is not known, however, it is commonly believed and estimated that from June 1984 till today, well over 100,000 (one hundred thousand) have been extra judicially killed and several hundred thousand tortured by the Punjab Police and other security forces in the state of Punjab, out of which well over 10,000 (ten thousand) cases of torture and extra

judicial killings took place during the tenure of and while the defendant was Chief Minister of Punjab.

18) The claims of the named Plaintiffs, the class representatives, are typical of the claims of the class. The named plaintiffs are able to and will fairly and adequately protect the interests of the class.

19) There are common questions of law and fact in this action that affect and relate to each member of the class including:

      a. Whether the defendant directly or indirectly, ordered, participated, acquiescence, connived, was aware of, the unlawful act of security forces and Punjab Police committed in the State of Punjab during his tenure as Chief Minister?

      b. Whether the defendant authorized, commanded, or directed the unlawful acts of the security forces and Punjab Police operating under his command and authority?

      c. Whether the Defendant knew or should have known that the security forces and particularly Police of the State of Punjab of which he is and was head of the Executive during his tenure, committed acts of torture, abuse and inhuman and cruel treatment against the named and unnamed individual Defendants.

d. Whether defendant failed to punish or ratified such unlawful acts committed by the security forces and Police of the State of Punjab?

e. Whether defendant failed to take adequate and appropriate measures to prevent police officers and members of security forces in his State from committing acts of torture and violations of human rights?

f. Whether the defendant acted upon, promoted and continues to promote and practice "impunity" towards the members of security forces and police officers who have been involved in torture and human rights abuses?

g. Whether the defendant's regime is guilty of impunity by defending the notorious Police Officer Sumedh Saini, currently Director General of Punjab Police, before the courts in complaints of human rights violations?

h. Whether the defendants actions relating to security forces and police in Punjab, during 1997-2002 and 2007-2012 give rise to liability under applicable international and domestic laws.

20) This action is properly maintained as a class action because: a) Defendant acted and failed to act in a way generally application to the class, making any declaratory relief awarded appropriate to the class as a whole; and

b) questions of law and fact common to the class predominate over questions affecting individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## III. JURISDICTION AND VENUE

21)     Plaintiffs allege that Defendant is liable for Torture, Cruel and inhuman treatment as defined by customary international law and the Torture Victim Protection Act (TVPA), Pub. L. No. 102-256, 105 Stat. 73 (1992) (codified at 28 USC § 1350, note). Plaintiffs further allege that Defendant is liable for violations of customary international law and treaty law prohibiting the commission of human rights violations and acts of torture. Accordingly, this Court has jurisdiction over this action based on 27 USC § 1350 (Alien Tort Statue) and 28 USC § 1331. The Court has jurisdiction over the state law claims pursuant to 28 USC § 1367.

22)     Venue is proper in the Eastern District of Wisconsin pursuant of 28 USC §§ 1391(b)(3) and (d). This Court has personal jurisdiction over Defendant as at or around the time of filing the instant complaint, the defendant is present in the state of Wisconsin within the territorial boundaries of this District.

## IV. STATEMENT OF FACTS

23) Sikhs are a religious minority in India, a Hindu majority country and are largely inhibited in the Indian state of Punjab. Since country's independence in August 1947, Sikhs have been continuously deprived of many social, political and economic rights starting with the usurpation of separate status of Sikhism under the Indian Constitution. Article 25 of the constitution of India declares the Sikhs, who are by all means a separate and distinct religion, as Hindus. Continuous denial of rights to the Sikh community of Punjab eventually lead to the demand for creation of separate and independent state of Khalistan during the decade of 80s and 90s. In June 1984 Golden Temple, the Vatican of Sikh religion in the city of Amritsar, Punjab was attacked by the Government with 30,000 armed troupes resulting in the death of more than 10,000 pilgrims. The operation is infamously known as "Operation Blue Star".

24) In the aftermath of Operation Blue Star, the Punjab Government through Punjab police and other security forces at its disposal launched a massive counter insurgency initiative under which illegal detention of Sikhs, torture of Sikh detainees and even extra judicial killing of Sikh detainees were used as tools to suppress the movement in support of Khalistan.

25) The defendant during his tenure as Chief Minister from 1997-2002 and 2007 till present not only connived from covered up the unlawful acts of the police

officer committed during 1984-97 but also allowed and acquiescenced commission of acts of torture by the police and other security forces under his command.

26)     It is believed and estimated that from June 1984 till today, well over 100,000 (one hundred thousand) have been extra judicially killed and several hundred thousand tortured by the Punjab Police and other security forces in the state of Punjab, out of which well over 10,000 (ten thousand) cases of torture and extra judicial killings took place during the tenure of and while the defendant was Chief Minister of Punjab.

## FACTS RELATED TO INJURIES TO INDIVIDUAL PLAINTIFFS

27)     **Plaintiff Jeet Singh**, a baptized Sikh and supporter of separate Sikh State of Khalistan is International General Secretary SAD-Mann. Jeet Singh left India in April 2009 and is in USA since then. While living in Punjab, India, the Plaintiff suffered the following incidents of detentions and tortures during in the hands of security forces which were under the command and control of the Defendant.

   i.     **February 2001:**     Jeet Singh along with his wife Gurdeep Kaur was taken into custody by the Police from Sangroor, Punjab and was kept in illegal detention for 30 days without being charged with any crime. During

the detention, Jeet Singh was severely beaten and tortured and at time was beaten in the presence of his wife to humiliate him and to mentally torment his wife who was forced to see her husband beaten up. Most of the torture during this detention took place at the facility known as CIA Staff Ladha Kothi, Sangroor, Punjab. Har Narinder Singh was In charge of the facility (a.k.a SHO), Gurinder Singh Dhillon was SSP of Sangroor District, Sumedh Saini was Additional Director General of Punjab Police (AGP) and one P.C. Dogra was Director General of the Punjab Police (DGP) and Defendant was chief executive and head o the Government and responsible for the acts of all the police officers working in his state.

ii. **December 14, 2007:** Petitioner was taken into illegal custody by the from Sangroor Punjab, and was detained for 8 days without being charged with any crime. Detained and tortured the facility known as Kotwali Sangroor. Balwinder Singh was in charge of the facility (SHO) during the time the petitioner was tortured, Pritpal Singh Thind was Deputy Superintendent of Police (DSP) of that area, Arunpal Singh was Senior Superintendent of Police (SSP) of that area, Sumedh Saini was Assistant Director General of Punjab Police (AGP).

The Petitioner's detention was reported in the Newspaper Punjabi Tribune and Desh Sewak.

12

iii.    **January 08, 2008:** Petitioner was taken into custody by the police from Sangroor Punjab, and was detained for 6 days without being charged for any crime. The petitioner was detained and tortured at the facility known as CIA Staff Ladha Kothi, Sangroor, Punjab. The petitioner's detention was reported in The Tribune (English Newspaper), Chandigarh.

iv.    **March 06, 2009:**  Petitioner was taken into custody from Sangroor, Punjab, and was detained for 4 days without being charged with any crime. The petitioner was detained Police Station Dharam Gharh, Punjab India and was tortured during the detention. The SHO in charge of the facility at that time was Baljit Singh and Arunpal Singh was SSP of the area and Sumedh Saini was AGP. The petitioner's detention was Reported in the Newspaper "The Tribune", Punjabi and English.

v.    **SPECIFIC ACTS OF TORTURE:**

During the above listed detentions by the Punjab Police and security forces, the petitioner was subjected to following acts of torture perpetrated by the members of Police and security forces:

I. Beaten with leather belts.

II. Wooden rollers on legs and thighs.

III. Water Boarding

IV. Legs pulled and stretched apart.

28) **Gurdeep Kaur,** petitioner, was born into Sikh Family and is a baptized Sikh, wife of petitioner Jeet Singh and herself a supporter of demand for independent Sikh state of Khalistan. During her stay in Punjab the petitioner was subject to following incidents and acts of torture:

i. **February 2001:** Gurdeep Kaur along with her husband Jeet Singh was taken into custody by the Police from Sangroor, Punjab and was kept in illegal detention for 30 days without being charged with any crime. During the detention, Gurdeep Kaur was severely beaten and tortured and at time was forced to see her husband Jeet Singh beaten to mentally torment her. Most of the torture during this detention took place at the facility known as CIA Staff Ladha Kothi, Sangroor, Punjab. Har Narinder Singh was In charge of the facility (a.k.a SHO), Gurinder Singh Dhillon was SSP of Sangroor District, Sumedh Saini was Additional Director General of Punjab Police (AGP) and one P.C. Dogra was Director General of the Punjab Police (DGP)

and Defendant was chief executive and head o the Government and responsible for the acts of all the police officers working in his state.

ii.     **SPECIFIC ACTS OF TORTURE:**

During the above listed detentions by the Punjab Police and security forces, the petitioner was subjected to severe physical beatings by both female and male police officers, including repeated slapping, pulling of her hair and banging of her head against the wall. The petitioner was also forced to see her husband being tortured.

29)     **Jagtar Singh,**     Petitioner is a Sikh male from Punjab, India, Member and supporter of SAD-Mann and supporter of Khalistan. Petitioner was illegally detained and tortured by the Punjab Police, during the Badal regime, on the following occasions:

i.     **December 1999**:  Petitioner was taken into custody by the police from Fatehgarh Sahib, Punjab and was detained at Police Station Fatehgarh Sahib, Punjab for 5 days without being charged with any crime.

ii.     **September 2008**:  Petitioner was taken into illegal custody by the police from Sehna, Punjab, and was detained at the facility known as "CIA Staff Barnala" located in Barnala, Punjab, operated and controlled by Punjab Police and/or other security forces in Punjab.

### iii.    SPECIFIC ACTS OF TORTURE:

During the above listed detentions by the Punjab Police and security forces, the
petitioner was subjected to following acts of torture perpetrated by the members
of Police and security forces:

   I.    Given electric shocks on ears

   II.   Laid on ice slabs

   III.  Poured cold water

   IV.   Beaten with leather belts and wooden sticks

   V.    Wooden rollers on legs and thighs

   VI.   Legs pulled and stretched apart.

   VII.  Tied down in wooden trap for extended period to time.

### Defendant's Participation, Role and Responsibility

30)    Defendant was Chief Minister (CM) of the State of Punjab from 1997-2002
and from 2007 till 2012 and as Chief Minister heads all the security forces in
Punjab, particularly Punjab Police.

31)    As CM, defendant Badal is also directly and ultimately responsible for the
actions of all the government machinery and particularly the security forces and
the Punjab Police the operating under his command and control.

32) As CM the defendant exercises and during relevant times exercised full control over the security forces in Punjab and Punjab Police, particularly, appointment, transfer, promotion, demotion, suspension and relegation of officers and members of the security forces and particularly Punjab Police.

33) The defendant Badal, throughout his tenure has also actively shielded, protected and promoted the police officers who were or have been involved in gross human rights violations, extra judicial killings and torture.

34) The defendant during his tenure as Chief Minister from 1997-2002 and 2007 till present not only connived from covered up the unlawful acts of the police officer committed during 1984-97 but also allowed and acquiescenced commission of acts of torture by the police and other security forces under his command.

35) It is believed and estimated that from June 1984 till today, well over 100,000 (one hundred thousand) have been extra judicially killed and several hundred thousand tortured by the Punjab Police and other security forces in the state of Punjab, out of which well over 10,000 (ten thousand) cases of torture and extra judicial killings took place during the tenure of and while the defendant was Chief Minister of Punjab.

RECENT HUMAN RIGHTS ABUSES DURING BADAL'S REGIME:

36) On March 29, 2012, one Jaspal Singh, 18, of Village Chour Sidhwan, District Gurdaspur, Punjab was killed extra judicially by the Punjab Police.

37) On March 14, 2011, one Sohan Singh, alias Sohanjit Singh was tortured to death in the custody of Punjab, Police, in the city of Amritsar, Punjab.

38) On January 18, 2011, Shaminder Singh alias Shera of village Babbowal, District Hoshiarpur, Punjab, was extra judicially killed by the Punjab Police.

39) On December 06, 2009, Darshan Singh, was killed extra judicially by the Punjab Police, in Ludhiana, Punjab.

40) Not a single police officer in charge and responsible for the extra judicial killings have been investigated or prosecuted by the Defendant.

## A. Inadequacy of Local Remedies

41)        Upon information and belief, as practical matter and proven fact, no

adequate remedies are available to Plaintiffs under the systems in India. In fact,

Indian governments, both State and Federal, unabashedly practice "impunity"

towards the human rights violators. All efforts by or on behalf of the plaintiffs,

or others similarly situated, to seek adequate remedy against the police officers

and/or defendant have been countered by the defendant through his influence

and position, and in fact the defendant has openly shields, protects and

promotes the police officers involved in human rights violations. The case of

Sumedh Saini, currently DGP of Punjab Police is telling, whom the defendant

not only protects from court cases but has also promoted and appointed him as

Director General of Punjab Police. In another instance, notorious Police Officer

K.P.S Gill who has been responsible for numerous cases of tortures and extra

judicial killings, has been appointed as advisor to the Defendant's regime. All

this establishes the inadequacy of local remedies available to the petitioners.

## **General Allegations**

42)    The acts described in this Complaint were ordered and/or committed and

were in the knowledge of or should have been in the knowledge of the

defendant, by the police and security forces in Punjab, upon whom the defendant exercises direct control and command and defendant has failed

43)　The defendant directly or indirectly, ordered, participated, acquiescence, connived, was aware of, the unlawful act of security forces and Punjab Police committed in the State of Punjab during his tenure as Chief Minister.

44)　The defendant authorized, commanded, or directed the unlawful acts of the security forces and Punjab Police operating under his command and authority.

45)　The Defendant knew or should have known that the security forces and particularly Police of the State of Punjab of which he is and was head of the Executive during his tenure, committed acts of torture, abuse and inhuman and cruel treatment against the named and unnamed individual Defendants.

46)　The defendant failed to punish or ratified such unlawful acts committed by the security forces and Police of the State of Punjab.

47)　The defendant failed to take adequate and appropriate measures to prevent police officers and members of security forces in his State from committing acts of torture and violations of human rights?

48)　The defendant acted upon, promoted and continues to promote and practice "impunity" towards the members of security forces and police officers who have been involved in torture and human rights abuses.

49) The defendant's regime is guilty of impunity by defending the notorious Police Officer Sumedh Saini, currently Director General of Punjab Police, before the courts in complaints of human rights violations.

50) The defendant's actions relating to security forces and police in Punjab, during 1997-2002 and 2007-2012 give rise to liability under applicable international and domestic laws.

## FIRST CLAIM FOR RELIEF
*(Crimes Against Humanity)*

51) Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

52) The abuses committed against Plaintiffs and decedents constitute crimes against humanity. Defendant knew or should have known that police and security forces under his command and control torture and extra judicially kill individuals in Punjab.

53) Defendant, by virtue of this inhuman act, also caused great suffering and /or serious injury to body or to mental or physical health.

54) Defendant's acts and omissions constitute "tort[s]…committed in violation of the law of nations or a treaty of the United States" under 28 U.S.C § 1350 and also violate 28 § 1331 in that the acts and omissions against

Plaintiff's violated customary international law as reflected , expressed, and defined in multilateral treaties and other international instruments ,international and domestic judicial decisions, and other authorities.

55)     The acts and omissions constituting crimes against humanity caused Plaintiff's to suffer damages, including severe physical and mental pain and suffering, in amounts to be determined at trial.

56)     Defendant's acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.


## SECOND CLAIM FOR RELIEF

*(Cruel, Inhuman, or degrading Treatment or Punishment)*

57)     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58)     The abuses committed against Plaintiff's and Decedents described herein each separately   constitute cruel, inhuman or degrading treatment or punishment. These acts include, but are not limited to: severe beating; giving electric shocks; laying on the ice slabs; pouring cold water; beating with leather belts and wooden sticks; rolling wooden rollers on legs and thighs; pulling and stretching of legs apart; tying down in wooden trap for extended period to time

22

and slapping, resulting in severe physical and psychological abuse and agony, humiliation, fear and debasement; the injury and in some cases death.

59)    Defendant's acts also constitute torts committed in violation of the law of nations, and thus of the United States, as reflected in federal common law which incorporated extrajudicial killing, pursuant to 28 U.S.C §§ 1331 and 1350 .

60)    Decisions and other authorities. Extrajudicial killing is similarly reflected, expressed, defined and codified in multilateral treaties and other instrumental instruments, international and domestic judicial decisions, and other authorities, and is thus actionable.

61)    Defendant's acts and omissions described caused Plaintiffs to suffer damages, including severe mental and emotional pain and suffering in an amount to be proven in trial.

62)    Defendant's acts and omissions were deliberate, willful, intentional, wanton, malicious and oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

*(Extrajudicial Killing)*

63) Plaintiff's re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 60 of this complaint as if fully set forth herein.

64) With regard to the events alleged herein, Defendant himself or through officers of the force under his control, acted under the actual or apparent authority and/or color of law of the state of India.

65) The killings of decedent's were deliberate and not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees that are recognized as indispensable by civilized peoples. The killings were not lawfully carried out under the authority of any country or court.

66) The killings of Decedents constitute extrajudicial killings as defined by the Torture Victim Protection Act, Pub .L. No. 102-256,106 Stat.73 (1992) (codified at 28 U.S.C § 1350, note). Additionally, the killings constitute torts committed in violation of the law of the nations, and thus of the United States, as reflected in federal common law which incorporates extrajudicial killings as a violation, pursuant to 28 U.S.C. §§ 1331 and 1350.The conduct constitutes violations of the law of nations and customary international law prohibiting extrajudicial killing, reflected, expressed, defined and codified in multilateral treaties and other international instruments and domestic judicial decisions and other authorities.

67) Defendant knew or should have known that police and security forces under his command and control torture and extra judicially kill individuals in Punjab.

68) Upon information and belief, no adequate remedies were available to the Plaintiff's as a practical matter in India.

69) Defendant's acts and omissions caused Plaintiffs and Decedent's next of kin to suffer damages, including severe physical and mental pain and suffering in amounts to be determined at trial.

70) Defendant's acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.


## FOURTH CLAIM FOR RELIEF

*(Negligence)*

71) Plaintiff's re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72) Defendant owned a duty to Plaintiffs because the police and other forces under the command and control of the defendant were known for human rights violations, custodial torture and extra judicial killings and defendant

owed a duty to Plaintiff to not only control the police and other forces under his command but also to punish the police officers involved in such acts but the defendant has been doing just the opposite.

73)     Beyond mere negligence, Defendant's acts were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in addition to compensatory damages, in respective amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### *(Battery)*

74)     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75)     Defendant through the forces in his command and control engaged in such contact with the plaintiffs that caused harm to the plaintiffs and the defendant intended to bring about this contact.

76)     As a direct and proximate act of omission of the Defendant, Plaintiff's, other members of class and their decedents were harmed. It was reasonably foreseeable that the attack would cause this harm.

77)     Defendant's acts and omissions caused Plaintiff's to suffer damages, including severe physical and mental pain and suffering, in amounts to be determined at trial.

78)     Defendant's acts and omissions were deliberate, willful, intentional,

        wanton, malicious, and/or oppressive, and should be punished by an award of

        punitive damages in amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

*(Intentional Infliction of Emotional Distress)*

79)     Plaintiffs re-allege and incorporate by reference the allegations set

        forth in paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80)     Defendant was in charge and in command of the police force and

        security forces and knew or should have known that the actions of the forces

        under his command would result in death and injuries the plaintiffs.

81)     Defendant intended to bring about this contact.

82)     Defendant intended to cause Plaintiffs to suffer humiliation, mental

        anguish and extreme emotional distress or, alternatively, Defendant recklessly

        disregarded a substantial probability of causing humiliation, mental anguish,

        and severe emotional distress to Plaintiffs with his conduct.

83)     As a direct and proximate cause of Defendant's outrageous conduct,

        Plaintiffs suffered severe emotional distress and mental suffering. It was

        reasonably foreseeable that the attack would cause this suffering.

84)     Defendant's acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

*(Negligent Infliction of Emotional Distress)*

85)     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86)     Defendant owed a duty to Plaintiffs to refrain from intentional and wantonly harmful or outrageous conduct.

87)     Defendant violated this duty and created an unreasonable and foreseeable risk of substantial bodily harm or death to the Plaintiffs.

88)     Plaintiff's have suffered and will continue to suffer extreme mental anguish and emotional distress that was directly caused by the trauma, shock, and fear that they experienced during and directly after the violent attacks orchestrated by the Defendant.

89)     Moreover, Defendant's conduct caused the named Plaintiff's and other members of the class to witness members of their immediate families suffer torture and/or violent deaths or grave physical injury. Defendant's conduct was

28

a substantial factor in bringing about the injuries and deaths to which Plaintiff's bore witness.

90)  When he acted, commanded, directed and/or allowed to happen the attack, Defendant carelessly and negligently ignored the obvious risk of causing Plaintiffs this trauma, shock, fear and severe emotional and mental suffering. Defendant's disregard for the substantial risk of causing this trauma, suffering, and fear was so extreme in degree, as to go beyond all possible bounds of decency, and are utterly outrageous and intolerable in a civilized community.

91)  In this manner, Defendant negligently inflicted severe emotional distress upon Plaintiffs. Defendant's acts and omissions caused Plaintiffs to suffer damages in amounts to be determined at trial.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follows:

a) For compensatory damages in an amount to be proven at trial;
b) For  punitive and exemplary damages in an amount to be proven at trial;
c) For reasonable attorney's fees and cost of suits;
d) For a declaratory judgment holding that Defendant's conduct was in violation of the laws of nations.
e) For such other and further relief as the Court may deem just and proper.

A jury trial is demanded on all issues

Dated: August 08, 2012

*Avtar Singh*

**PLAINTIFF**
**"Sikhs for Justice"**
through its Coordinator -- Avtar Singh
Empire State Building
350 Fifth Ave, 59th Floor,
New York, NY 10118
T: 212.301.2707 & F: 212.601.2610

*Jeet Sing*

**PLAINTIFF**
**Shiromani Akali Dal (Amritsar) a.k.a SAD-Mann**
through its International General Secretary Jeet Singh
2409 North Valentine Ave,
Fresno, CA 93722

*Jeet Sing*

**PLAINTIFF**
**Jeet Singh**
2409 North Valentine Ave,
Fresno, CA 93722

*Gurdeep Kaur*

**PLAINTIFF**
**Gurdeep Kaur**
2409 North Valentine Ave,
Fresno, CA 93722

*Jagtar Singh*

**PLAINTIFF**
Jagtar Singh
1975 North Antioch Ave, Fresno, CA 93722